**IRVING TRUST COMPANY, Libelant,**

v.

**THE Steamscrew GOLDEN SAIL (ex Wang Archer), her engines, etc., and Marine Bulk Carriers, Inc., Respondents,**

**And Companion and Consolidated Libels, Intervenors.**

**No. 60–14.**

United States District Court
D. Oregon.

July 28, 1961.

Erskine B. Wood, Portland, Or., for libelant.

Alfred A. Hampson, Portland, Or., for intervening Overseas Mercantile Corp.

Donald S. Richardson and James B. Griswold, Portland, Or., for intervenors.

EAST, District Judge.

The libelant herein (Trust) seeks to foreclose a first ship's mortgage held by it.

The respondents consist of second ship's mortgage holder and various claimants *in rem* against the S. S. Golden Sail.

This matter comes forward to the Court upon the segregated issue of the standing or priority of the three claims:

(1) Vacation, welfare and pension contributions allegedly to be paid by the Golden Sail and her claimants to some nine intervening trustees, acting under and pursuant to the union contract negotiated by and between the union as bargaining agent for its members with the

owners of the Golden Sail and standing in priority to Trust's first ship's mortgage, as being preferred maritime liens for "wages of the crew of the vessel * * " intervening members of the crew claiming

(2) Unpaid wages after the arrest of the vessel Golden Sail, and

(3) Transportation and linen allowances after said arrest.

The matter of this segregated issue having been presented to the Court on written briefs and the Court now being advised, enters its opinion.

(1) Vacation, Welfare and Pension.

▇▇▇ All of the unlicensed members of the Golden Sail were represented by the Seafarer's International Union, Atlantic and Gulf District, AFL-CIO. Their wages, hours and working conditions were set forth in collective bargaining agreement known as the Freightship Agreement, which provided, *inter alia*, for certain payments to be made to the various trust funds for vacation pay, welfare and pension benefits and education under the "Plan of the Atlantic" fund. Pursuant to these agreements, the owners and operators of the Golden Sail obligated themselves to pay to the various trustees a particular sum per day for each crew member serving aboard the Golden Sail. The funds were to be used by the trustees in accordance with the terms of the trust agreements to pay vacations to the crew members and provide health, welfare and pension benefits.

The trustees assert herein that the unpaid contributions under the above agreement constitute a preferred maritime lien; in particular, that they are a part of the "wages of the crew of the vessel." 46 U.S.C.A. § 953, *inter alia*, defines a preferred mortgage lien as follows:

"(a) When used hereafter in this chapter the term preferred maritime lien means * * *, for wages of the crew of the vessel, * * * "

This statute does not define the phrase "wages of the crew of the vessel," and this question in these proceedings was of first impression, and the Court was about to conclude the issue adverse to the intervening trustees, upon an analogy drawn from the following legal premise that "wages * * * due to workmen" so as to be entitled to priority under Sec. 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2), under the decision of the United States Supreme Court in United States v. Embassy Restaurant, Inc., 1956, 359 U.S. 29, 79 S.Ct. 554, 555, 3 L.Ed.2d 601, wherein the Court held that the contributions owed to the welfare fund were not "wages * * * due to workmen." The Court examined the nature of the contributions and stated:

"Let us examine the nature of these contributions. They are flat sums of $8 per month for each workman. The amount is without relation to his hours, wages or productivity. It is due the trustees, not the workman, and the latter has no legal interest in it whatsoever. A workman cannot even compel payment by a defaulting employer. Moreover it does not appear that the parties to the collective agreement considered these welfare payments as wages. The contract here refers to them as 'contributions.' Finally, Embassy's obligation is to contribute sums to the trustees, not to its workmen; it is enforceable only by the trustees who enjoy not only the sole title, but the exclusive management of the funds." 359 U.S. 29, at page 32, 79 S.Ct. at page 556.

However, this Court was advised of the report of Commissioner James E. Ross for the United States District Court for the Southern District of Texas in the matter of Meridian Trading Corp. v. S. S. Denton, etc., being a preferred ship's mortgage foreclosure proceedings substantially upon the questions presented in these proceedings, which report is now published in 1960 A.M.C. 2264 (Vol. 38, Part II). The Commissioner holds that contributions made by the shipowners to the trustees under the union bargaining agreement for vacation pay, welfare and pension payments to the members of the

union are not wages within the meaning of 46 U.S.C.A. § 953, providing that "wages of the crew of the vessel" are preferred maritime liens. The Commissioner talks about some conditions which are not common with the agreements and plans in the instant case, but these words of the Commissioner are conclusive on the issue, in my opinion:

"There are several other common provisions in each of these six plans, however, which show plainly that employer contributions to the plans are not wages of the crew. Each plan under consideration provides that the employer contributions shall be used for the purpose of paying the administrative costs of the operations of the plan, the expenses of the trustees, attorney's fees in case the trustees employ attorneys for purposes authorized by the plan, the costs of fidelity bonds required by the trustees, and even the expense of defense of suits brought against the trustees in their official capacity as trustees. These matters are far too far removed from the payment of wages to mariners engaged in the navigation of a vessel (and in her services) to be classified as wages of the crew of the vessel. The contracting parties (union trustees and owners of the vessel) negotiated and contracted for the liability of the owners *in personam* for contribution to these plans, but none of the parties intended for any of these obligations to attach to vessels *in rem*." Pp. 2277–2278. (Parenthetical material added.)

The following editor's note appears at p. 2264:

"Exceptions to the Commissioner's report filed for Russell H. Brandon by trustees of International Organization M. M. & P. Plan, Maritime Engineers Beneficial Ass'n, and Augusta Oil Burning S. P. A., were denied by the court (Ben C. Connolly, D. J.) on November 23, 1960, an appropriate order to be submitted by counsel within 10 days. Ed."

Since the above proceedings, Mr. Jack Brookshire, a Commissioner for the United States District Court for the Eastern District of Texas, at Beaumont, filed his report on or about April 7, 1961, *in re* the matter of the S. S. Ozark. So far as I am advised, this report has not been published, but, with thanks to proctors for the trustees, the Court has been supplied with a purported copy thereof.

It appears therefrom that Commissioner Brookshire's report to the Court as to contributions for vacation pay is directly contra to Commissioner Ross' report in that Commissioner Brookshire feels and is "constrained to hold" and recommends to his Court that "contributions payable to the trustees of the union for vacation plans due in admiralty law amount to, constitute and are equivalent to, wages, therefore are entitled to the priority and ranking, and status of seamen's lien wage claims." As to claims for payments due the trustees for welfare and pension plans, Commissioner Brookshire appears to agree with Commissioner Ross. I feel that Commissioner Brookshire fails to perceive the essential difference between union bargaining agreements of workers ashore and the signing of ship's articles between the seamen and the master of the vessel for the voyage, which is governed by "shipment of the crew." 46 U.S.C.A. §§ 561–591. It is legend that the unpaid "wages of the crew" is a libel against the vessel *in rem*. The trustees' claim under the union bargaining agreement is an action *in personam* against the signatory owners thereof. I think Commissioner Ross' conclusion is sounder and I shall follow the course charted by him. Therefore, the trustees' claim for preferred maritime lien on account of vacation pay should be denied.

(2) Unpaid Wages after the Arrest of the Vessel Golden Sail

It appears from the evidence that all of the crew members had been paid in full their accrued wages for the entire voyage, from the signing of the articles at Vancouver, Washington, until its conclusion at Vancouver, Washington, to

and including January 15, 1960, on which date the vessel was arrested and taken into custody by the Marshal of the United States District Court for the District of Oregon pursuant to the libel initially entered herein (order of Court, July 1, 1960, aggregating $50,939.79).

The crew members now ask for additional wages for the period January 16, 1960, through January 27, 1960, during which time the vessel was *in custodia legis* of the Marshal and during which time the crew members remained aboard. However, there is no showing in the evidence that the crew members remained aboard at the request of the owners or that they performed any ship's services at the request of or for the benefit of the Marshal. The voyage was completed and the crew members who remained aboard did so of their own free will. I conclude that upon this claim the seamen cannot prevail.

"It is well settled that no maritime lien can be allowed to seamen for wages accruing subsequent to the time the ship is taken into custodia legis, and particularly is this true where, as here, the libel is filed by the crew of the vessel. The theory here is that the act of seizing a ship, pursuant to legal process, effectively terminates the voyage, and thereby discharges the crew with no further claim for wages. Thus, seamen's wage claims are only effective for those services performed *prior to* libel." Citing Putnam v. Lower, 9 Cir., 1956, 236 F.2d 561, 570.

### (3) Transportation and Linen Allowance after Arrest

As stated above, the subject voyage was completed at Vancouver, Washington, on January 15, 1960, and the obligation of the master and his ship and the rights of the trustees under the signed articles had been faithfully performed. The crew was at liberty to leave the vessel, but voluntarily elected to remain aboard at the sufferance of the United States Marshal. I conclude that the claims of the crew members for trans-

portation and payment for linen allowance should be denied.

Proctors for all parties are advised that the segregated issues of the claims for stevedoring charges by Brady-Hamilton Stevedoring Company and J. L. Stulb, dba Texla Stevedoring Company, are set for call on August 7, 1961.

Proctors for libelant and second preferred ship's mortgage are requested to submit appropriate findings of fact and conclusions of law and decree upon this segregated issue in accordance with the above.