720 F.2d 1097
 1984 A.M.C. 319, 99 Lab.Cas. P 34,469
 WEST WINDS, INC., Nautical Electric, Inc., and Schou-Gallis
Co., Ltd., Plaintiffs-Appellees,
and
R. Rothmann, J. Wagner, A. Patterson, G. Valentine, J.
O'Laughlan, S. Veal, et al.,
Applicants-in-Intervention-Appellants,
v.
M.V. RESOLUTE, and M.V. Pvt. Peters, in rem, and Coast Line
Associates, in personam, Defendants-Appellees,
and
Coast Line Associates, Claimant-Appellee.
 No. 82-4717.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 13, 1983.
Decided Nov. 21, 1983.
 
 Richard S. Zuckerman, Washington, D.C., Leonard & Carder, San Francisco, Cal., for applicants-in-intervention-appellants.
 Mark J. Kenney, Severson, Werson, Berke & Melchior, San Francisco, Cal., for appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before ALARCON, CANBY, and REINHARDT, Circuit Judges.
 REINHARDT, Circuit Judge:
 
 
 1
 Appellants are 23 seamen and the trustees of their union's trust funds whose motion to intervene of right under Fed.R.Civ.P. 24(a)(2) was denied by the district court. The sole issue on appeal is whether contributions to trust funds created for the benefit of the employees are "wages of the crew" that may serve as the basis for a preferred maritime lien under 46 U.S.C. Sec. 953 (1976). We are compelled by precedent in this circuit to hold that they are not, at least in the absence of a loss of benefits. Accordingly, we affirm the district court's denial of the motion to intervene.
 
 
 2
 West Winds, Inc., Nautical Electric, Inc., and Schou-Gallis Co., Ltd., filed an admiralty complaint against the M/V RESOLUTE, in rem, and Coast Line Associates, the owner and operator of the vessel, in personam, under 46 U.S.C. Sec. 971 (1976), to recover the costs of repairs, supplies, and other necessaries furnished to the vessel. The 23 seamen appellants were employed by Coast Line Associates between January and June 1982. Under the provisions of its collective bargaining agreement with the International Organization of Masters, Mates and Pilots, Coast Line was required to contribute to trust funds that provide health, retirement, pension, training, vacation, and similar benefits to the seamen. Coast Line failed to make the contributions for the 23 seamen as required by the collective bargaining agreement. To protect their interest in procuring the payment of the delinquent trust fund contributions, the trustees and the seamen sought to intervene of right in the underlying action under Fed.R.Civ.P. 24(a)(2).
 
 
 3
 Appellants claim that the delinquencies give rise to a preferred maritime lien as "wages of the crew" under the Ship Mortgage Act of 1920, section 30, subsection M, 46 U.S.C. Sec. 953 (1976). Under the Act, "a lien for ... wages of the crew of the vessel" is a "preferred maritime lien" that has priority over all other claims and may be asserted in any in rem proceeding brought against a vessel. Id. Appellants maintain that, because contributions to the trust funds are a form of compensation, they should be treated as "wages of the crew." They do not allege, however, that the failure to make contributions has caused or will cause any loss of benefits.
 
 
 4
 The district court issued a memorandum and order denying appellants' motion to intervene. Relying upon Long Island Tankers Corp. v. S.S. Kaimana, 265 F.Supp. 723 (N.D.Cal.1967), the district court held that the delinquent trust fund contributions were not "wages of the crew" for purposes of section 953 and that therefore there was no basis for the assertion of a preferred maritime lien. Accordingly, the district court held that the applicants-in-intervention did not allege "an interest relating to the property or transaction which is the subject of the action" as required for intervention of right under Fed.R.Civ.P. 24(a)(2).
 
 
 5
 * Intervention of right under Fed.R.Civ.P. 24(a)(2):requires a timely showing that the applicant possesses an interest relating to the property or transaction which is the subject of the suit and is so situated that the disposition of the suit may as a practical matter impair the ability to protect that interest, and in addition that the applicant's interest is not adequately represented by the existing parties.
 
 
 6
 State of Idaho v. Freeman, 625 F.2d 886, 887 (9th Cir.1980) (citations omitted); see Sagebrush Rebellion, Inc. v. Watt, 713 F.2d 525, 527 (9th Cir.1983); Smith v. Pangilinan, 651 F.2d 1320, 1323-25 (9th Cir.1981); Blake v. Pallan, 554 F.2d 947, 951-55 (9th Cir.1977). Denial of a motion to intervene of right is a final order and therefore appealable under 28 U.S.C. Sec. 1291 (1976). See Sagebrush Rebellion, 713 F.2d at 527; County of Fresno v. Andrus, 622 F.2d 436, 438 (9th Cir.1980) (citing Blake v. Pallan, 554 F.2d at 951 n. 5). Because we agree with the district court that applicants-in-intervention do not possess a cognizable interest under 46 U.S.C. Sec. 953, we need not decide whether the other requirements of Rule 24(a)(2) are met.
 
 II
 
 7
 As appellees argue, there is Ninth Circuit precedent directly on point in this case. In Cross v. S.S. Kaimana, 401 F.2d 182 (9th Cir.1968) (per curiam), cert. denied, 393 U.S. 1095, 89 S.Ct. 879, 21 L.Ed.2d 785 (1969), in a one sentence opinion, we adopted the reasoning of the district court and held that contributions of employers to trust funds created pursuant to collective bargaining agreements to provide vacation, pension, and welfare benefits to seamen do not constitute "wages of the crew" under 46 U.S.C. Sec. 953. The district court decision, Long Island Tankers Corp. v. S.S. Kaimana, 265 F.Supp. 723 (N.D.Cal.1967), affirmed in Cross, addressed a factual situation strikingly similar to the one before us. In that case, as here, the employers were required to make contributions to the trust funds based upon the number of days and type of work performed by their employees. In Long Island Tankers, after several employers failed to make contributions the trustees of the funds brought an action seeking to assert preferred maritime liens to recover the contributions as "wages of the crew" under 46 U.S.C. Sec. 953. The district court dismissed the action and held that the contributions were not "wages of the crew" that could serve as the basis for the trustees' assertion of preferred maritime liens. See 265 F.Supp. at 726-27.
 
 
 8
 Appellants contend that we should distinguish Long Island Tankers because seamen, as well as trustees of the trust funds, seek to assert the lien here. We decline to do so. Appellants correctly assert that Long Island Tankers reserved a question regarding the right of seamen to assert a preferred maritime lien. The question reserved, however, was only whether seamen could assert a preferred maritime lien for a loss of benefits caused by an employer's failure to make trust fund contributions. 265 F.Supp. at 727-28. The court did not reserve the question whether seamen could assert a preferred maritime lien for a failure to make contributions when no accompanying loss of benefits was claimed. In reserving the question it did, the court expressly relied on the distinction between contributions that merely serve to fund benefits and the benefits themselves. Id. at 727-29. Because the seamen here do not allege any loss of benefits due to Coast Line's failure to make the trust fund contributions, we hold that they fall within the rule established in Long Island Tankers. However, like the court in that case, we reserve to another day the question whether seamen may assert a preferred maritime lien for a loss of benefits caused by an employer's failure to make contributions.
 
 
 9
 Appellants challenge the present-day validity of the reasoning of Long Island Tankers. In Long Island Tankers the court relied heavily upon the Supreme Court's decision in United States v. Embassy Restaurant, Inc., 359 U.S. 29, 79 S.Ct. 554, 3 L.Ed.2d 601 (1959). Embassy Restaurant held that employer contributions to trust funds were not entitled to priority over other debts as "wages ... due to workmen" under the Bankruptcy Act. See 359 U.S. at 35, 79 S.Ct. at 558. Claiming that Embassy Restaurant was "overruled" by Congress in the Bankruptcy Reform Act, Pub.L. No. 95-598 Sec. 507, 92 Stat. 2549, 2583-85 (1978), appellants argue that Long Island Tankers is no longer good law. We disagree.
 
 
 10
 In the Bankruptcy Reform Act, Congress placed "contributions to employee benefit plans" immediately below "wages, salaries, or commissions" on the hierarchy of debt priorities in bankruptcy proceedings. See 11 U.S.C. Sec. 507(a)(3), (4). Although the legislative history of 11 U.S.C. Sec. 507(a)(4) states that it "overrules" Embassy Restaurant, see S.Rep. No. 989, 95th Cong., 2nd Sess. 69 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5855, the statement is not entirely accurate. In Embassy Restaurant, the Court declined to treat contributions as wages; when Congress adopted the Bankruptcy Reform Act, it, too, refused to treat contributions as wages. Instead, it created a completely new category, with a lesser priority than wages, for such claims. Under the Bankruptcy Reform Act, if there are insufficient funds to pay both wages and contributions, the wages are paid and the contributions are not. This type of lesser priority for contributions was not considered by the Embassy Court.
 
 
 11
 In any event, Congressional action in response to a court's interpretation of a statute may not necessarily indicate disagreement with the court's analysis. See generally 1A J. Sutherland, Statutes and Statutory Construction ch. 22 (C. Sands 4th ed. 1972) (discussing judicial treatment of amendments to a statute). In fact, Congressional amendment of a statute may mean that Congress agrees with the court's interpretation of the existing statute, but believes that changed circumstances require amendment. All that can be said with certainty about the fact that a statute has been amended is that the amendment presumably changes legal rights under the statute. See 1A J. Sutherland, supra, Sec. 22.30, at 178-79. Although the Bankruptcy Reform Act changed the priority afforded to claimants like those in Embassy, Congress did not "overrule" Embassy or even reject its reasoning. Long Island Tankers therefore survives as precedent that is binding upon us.
 
 
 12
 Cross' affirmance of Long Island Tankers does not stand alone. Other courts addressing the issue have held that employer contributions to trust funds created to benefit employees are not "wages of the crew" under 46 U.S.C. Sec. 953. Barnouw v. S.S. Ozark, 304 F.2d 717, 719-20 (5th Cir.1962); Brandon v. S.S. Denton, 302 F.2d 404, 415-16 (5th Cir.1962); Irving Trust Co. v. The Golden Sail, 197 F.Supp. 777, 778-79 (D.Or.1961). Moreover, a recent Supreme Court decision defining "wages" under another maritime statute suggests the vitality of the holding in Long Island Tankers.
 
 
 13
 In Morrison-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs, --- U.S. ----, 103 S.Ct. 2045, 2049, 76 L.Ed.2d 194 (1983), the Supreme Court held that employer contributions to union health, welfare, pensions, and training trust funds are not "wages" for the purpose of computing compensation benefits under section 2(13) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. Sec. 902(13) (1976).[1] The Court emphasized that, because contributions are not "benefits with a present value that can be readily converted into a cash equivalent on the basis of their market values," they should not be treated as "wages." 103 S.Ct. at 2049. Rather than constituting benefits convertible to a cash equivalent, contributions generally accumulate in trust funds, which, after investment, finance future benefits that are non-convertible, and may vary according to an employee's needs. See id.; Long Island Tankers, 265 F.Supp. at 727.[2]
 
 
 14
 Despite Morrison-Knudsen, appellants argue that, because contributions to trust funds are increasingly given by employers to employees as a form of compensation, "wages of the crew" should be read to include such contributions. Appellants point out that some courts interpreting other statutes have held that "wages" includes contributions because they are, in fact, part of the total compensation for employment. See, e.g., W.W. Cross & Co. v. NLRB, 174 F.2d 875, 877-78 (1st Cir.1949); Inland Steel Co. v. NLRB, 170 F.2d 247, 251 (7th Cir.1948), cert. denied, 336 U.S. 960, 69 S.Ct. 887, 93 L.Ed. 1112 (1949); Dunlop v. Tremayne, 62 Cal.2d 427, 431, 398 P.2d 774, 777, 42 Cal.Rptr. 438, 441 (1965). Although we are sympathetic to appellants' argument, we are not free to accept it here. Part of the reason lies in certain limits that we perceive to exist with respect to the function of statutory interpretation.
 
 It has long been recognized that:
 
 15
 increasingly as a statute gains in age ... its language is called upon to deal with circumstances utterly uncontemplated at the time of its passage. Here the quest is not properly for the sense originally intended by the statute, for the sense sought originally to be put into it, but rather for the sense which can be quarried out of it in the light of the new situation.
 
 
 16
 Llewellyn, Remarks on the Theory of Appellate Decision and the Rules or Canons about How Statutes are to be Construed, 3 Vand.L.Rev. 395, 400 (1950) (emphasis in original); see H. Hart & A. Sacks, The Legal Process 1410-11 (tent. ed. 1958) (unpublished manuscript). For this reason, generally, a court interpreting a statute should:
 
 
 17
 ask itself not only what the legislation means abstractly, or even on the basis of legislative history, but also what it ought to mean in terms of the needs and goals of our present day society. This approach is required by the insuperable difficulties of readjusting old legislation by the legislative process and by the fact that it is obviously impossible to secure an omniscient legislature.
 
 
 18
 Phelps, Factors Influencing Judges in Interpreting Statutes, 3 Vand.L.Rev. 456, 469 (1950); see In re Grand Jury Subpoena of Persico, 522 F.2d 41, 64-65 (2d Cir.1975); see also G. Calabresi, A Common Law in the Age of Statutes 163-66 (1982) (suggesting that courts explicitly turn to common law principles to update statutes); Note, Intent, Clear Statements, and the Common Law: Statutory Interpretation in the Supreme Court, 95 Harv.L.Rev. 892, 913 (1982) (proposing a "common law model of statutory interpretation" that would allow courts to "view statutes as statements of consensually agreed upon principles").
 
 
 19
 Despite the general validity of this approach to statutory interpretation, the judiciary is not the proper branch of government to update complex statutes when legislative decisionmaking is necessary. For example, in the case of the Bankruptcy Reform Act's creation of a new intermediate level of debt priorities covering contributions, Congress was the only branch of government capable of making the necessary change; courts could only decide whether "wages" includes contributions and could not create a new, separate, and lesser priority category. See G. Calabresi, supra, at 158-62 (recognizing inherent difficulties in courts' updating of detailed and technical statutes); G. Gilmore, The Ages of American Law 96 (1977) ("[T]he more tightly a statute was drafted originally, the more difficult it becomes to adjust the statute to changing conditions without legislative revision." (footnote omitted)). Here, as with the bankruptcy laws, in order to bring the Ship Mortgage Act up to date, it may be necessary to create a new, separate, and lesser priority category for contributions. That, as we have already said, we cannot do.
 
 
 20
 We must reject appellants' argument for another reason, as well. The Supreme Court recently refused to define "wages" as including contributions in another maritime act despite its recognition of the changes that have occurred in the methods of paying compensation. See Morrison-Knudsen, 103 S.Ct. at 2051-53. It did so partly because the legislative history and administrative practice under the Longshoremen's and Harbor Workers' Compensation Act did not reflect an intention to include contributions. See id. at 2050-51. In light of this reasoning, we do not believe that we are free to ignore the judicial history of the Ship Mortgage Act and Long Island Tankers simply because of those same changes.[3]
 
 
 21
 In conclusion, Ninth Circuit precedent and other persuasive authority, as well as the complexities implicated by a judicial restructuring of lien priorities, compel the conclusion that contributions, at least in the absence of any actual loss of benefits, are not "wages of the crew" under 46 U.S.C. Sec. 953 and therefore cannot serve as the basis for the assertion of a preferred maritime lien.
 
 III
 
 22
 Although we are not free to afford appellants the relief they seek, they have offered compelling reasons why employer contributions to trust funds should be afforded some form of priority treatment for maritime lien purposes.
 
 
 23
 Demands for contributions to trust funds providing benefits to employees increasingly serve as a substitute for wage demands in collective bargaining negotiations. See S.Rep. No. 989, 95th Cong., 2d Sess. 69 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5855; H.Rep. No. 533, 93d Cong., 2nd Sess. 2-3 (1974), reprinted in 1974 U.S.Code Cong. & Ad.News 4639, 4640-41; see also Employee Retirement Income Security Act, Pub.L. No. 93-406, 88 Stat. 829 (1974) (extensively regulating the increasing number of trust funds created pursuant to collective bargaining agreements). For this reason alone, contributions to seamen's trust funds would warrant some form of priority treatment similar to that afforded "wages of the crew." Moreover, affording priority treatment to trust fund contributions would further the purpose of the preferred maritime lien--to protect the compensation given seamen. See S.Rep. No. 573, 66th Cong., 2nd Sess. 9 (1920).[4] Finally, there is somewhat of an anomaly in the fact that money given by an employer directly to an employee to spend on benefits is treated as "wages," but the same funds, if given to a trust fund that bestows identical benefits upon the employee, are not. See Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs, 686 F.2d 1336, 1345 (9th Cir.1982), vacated and remanded, 461 U.S. ----, 103 S.Ct. 2446, 77 L.Ed.2d 1329 (1983).
 
 
 24
 As these arguments strongly suggest, Congress may, as it did in enacting the Bankruptcy Reform Act, wish to "recognize[ ] the realities of labor contract negotiations, where fringe benefits may be substituted for wage demands." S.Rep. No. 989, 95th Cong., 2d Sess. 69 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5855.[5] Significant changes in economic conditions suggest the inadequacies of the present debt priorities in the Ship Mortgage Act--priorities that have not been changed since the Act was originally adopted in 1920. Amending 46 U.S.C. Sec. 953 to bring the lien priorities in line with modern economic reality would further the purpose of the section and avoid anomalous results.
 
 IV
 
 25
 We conclude that, at least absent any loss of benefits, seamen may not assert a preferred maritime lien for "wages of the crew" under 46 U.S.C. Sec. 953 based on an employer's failure to make contributions to trust funds. Therefore, the district court's denial of appellants' motion to intervene of right is
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Our judgment in Duncanson-Harrelson Co. v. Director, Office of Workers' Compensation Programs, 686 F.2d 1336 (9th Cir.1982), was vacated and remanded in light of the Supreme Court's decision in Morrison-Knudsen. See 461 U.S. ----, 103 S.Ct. 2446, 2447, 77 L.Ed.2d 1329 (1983). We subsequently vacated the part of our original decision which held that contributions are "wages" for purposes of the Longshoremen's and Harbor Workers' Compensation Act. See 713 F.2d 462 (9th Cir.1983)
 
 
 [2]
 In one opinion holding that contributions are "wages of the crew" under section 953, In re Bulk Food Carriers, Inc., No. 3-78-0187 (Bankr.N.D.Cal.1980), a bankruptcy court distinguished Long Island Tankers because the collective bargaining agreement before the bankruptcy court did not explicitly state that individual seamen had no right, title, or interest in the employer's contributions. Although some language in Long Island Tankers, see 265 F.Supp. at 726-27, and in decisions interpreting the debt priorities under the pre-1978 Bankruptcy Act, see, e.g., Sulmeyer v. Southern California Pipe Trades Trust Fund, 301 F.2d 768 (9th Cir.1962), suggests that the specific language of a collective bargaining agreement may determine whether disputed items are wages or contributions, such distinctions seem inappropriate given the reasoning in Morrison-Knudsen. Morrison-Knudsen makes it clear that the determinative factor is the general nature of contributions and not the specific nature of collective bargaining provisions covering right or title to the contributions
 In addition, although we have given contributions to vacation funds priority status as wages under the pre-1978 Bankruptcy Act because the amount due an employee is fixed, see In re E.V. Moore of California, Inc., 447 F.2d 1106 (9th Cir.), cert. denied sub. nom. Bowman v. Bay Area Painters' Trust Fund, 404 U.S. 995, 92 S.Ct. 535, 30 L.Ed.2d 547 (1971); Sulmeyer v. Southern California Pipe Trades Trust Fund, 301 F.2d 768 (9th Cir.1962), Long Island Tankers refused to treat contributions to vacation trust funds as "wages of the crew" under 46 U.S.C. Sec. 953; the Fifth Circuit also has refused to do so. See Barnouw v. S.S. Ozark, 304 F.2d 717, 719-20 (5th Cir.1962). Given this authority, the fact that one of the claims is that Coast Line failed to make contributions to vacation trust funds does not permit us to reach a different conclusion with respect to those contributions.
 
 
 [3]
 Appellants suggest that this case is distinguishable from Morrison-Knudsen because a different statute is involved, because there is no long history of administrative interpretation for this court to rely upon, and because 46 U.S.C. Sec. 953 has not been amended since its enactment in 1920. Such distinctions cannot be determinative, however, when there is clear precedent in this circuit that is contrary to appellants' proposed interpretation
 
 
 [4]
 Wages of seamen are given such a protected status that the owner of a vessel delinquent in paying wages is liable for double the amount owed to the seaman. See 46 U.S.C. Sec. 596 (1976). That penalty payment has itself long been treated as "wages of the crew" for the purposes of the assertion of a preferred maritime lien under 46 U.S.C. Sec. 953. See, e.g., Collie v. Fergusson, 281 U.S. 52, 54, 50 S.Ct. 189, 190, 74 L.Ed. 696 (1930); Gerber v. Spencer, 278 F. 886, 889 (9th Cir.1922)
 
 
 [5]
 In making this suggestion, we recognize that "[o]ne of the facts of legislative life ... is that getting a statute enacted in the first place is much easier than getting the statute revised so that it will make sense in the light of changed conditions." G. Gilmore, supra, at 95; see Phelps, supra, at 469