**PUERTO RICO MARITIME SHIPPING AUTHORITY, Plaintiff,**

v.

**POINT VIGILANCE CORPORATION and The Steam Screw Vessel "Point Manatee," Official No. 515622, her engines and all appurtenances, Defendants,**

**and Various Intervening Plaintiffs.**

No. 84–444–Civ–J–12.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 10, 1985.

George L. Hudspeth, Jacksonville, Fla., and Wm. E. Cohn, Washington, D.C., for Puerto Rico Maritime.

Frank E. Hamilton, III, Tampa, Fla., for Seafarers Trust.

Edward A. White, Jacksonville, Fla., and Joel C. Glanstein, New York City, for Marine Engineers Beneficial Association-Associated Maritime Officers, AFL–CIO.

Stephen Paul Blank, New York City, and George D. Gabel, Jr., Jacksonville, Fla., for defendants.

ORDER

MELTON, District Judge.

This matter is before the Court on a Motion for Summary Judgment filed by plaintiff Puerto Rico Maritime Shipping Authority ("PRMSA") on March 27, 1985, and on a Cross Motion for Summary Judgment filed by intervening plaintiff District 2 Marine Engineers Beneficial Association-Associated Maritime Officers, AFL–CIO ("MEBA") on May 6, 1985. Having been advised by counsel that there has been a tentative settlement of the claims of intervenors John D. Ross and Vincent L. Sherwood, the Court will only consider that portion of plaintiff's motion contesting the priority of MEBA's claim.

PRMSA filed a complaint *in rem* against the vessel POINT MANATEE and *in personam* against its owner Point Vigilance Corporation ("Point Vigilance"), seeking to foreclose on its preferred ship mortgage. The POINT MANATEE was sold for $354,000, and the Court confirmed the interlocutory sale on October 19, 1984. PRMSA claims that it is entitled to first priority over the remaining interlocutory sale proceeds under 46 U.S.C. § 953(b) (1982). Section 953(b) gives priority to preferred ship mortgage liens over all claims except preferred maritime liens and expenses, fees, and costs allowed by the Court. Preferred maritime liens include "wages of the crew of the vessel." 46 U.S.C. § 953(a)(2) (1982). MEBA contends that its claim is for "wages of the crew" and is thus entitled to priority over PRMSA's mortgage.

Pursuant to a June 16, 1978 Memorandum of Agreement, Point Vigilance became obligated to pay approximately five percent of the base and non-watch wages of the crew into the MEBA Money Purchase Ben-

efit Plan. Under the Pension Plan Rules and Regulations, the trustees were directed to maintain individual accounts for each eligible employee and to credit those accounts annually with the employer's contributions. MEBA relies on *Lindsey v. American Coastal & Foreign Shipping Co.,* No. 82 Civ 7123 (S.D.N.Y.1983) [*"Lindsey I"*], for the proposition that contributions to the Money Purchase Benefit constitute wages under 46 U.S.C. § 953(a).

The district court in *Lindsey I* held that payments to a similar money purchase benefit plan were wages within the meaning of 46 U.S.C. § 596. Section 596 deals with the imposition of penalties on shipowners who do not timely pay a seaman's wages. A broader definition of wages is perhaps appropriate under section 596 when the statute's purpose is for the protection of seamen. Under section 953, however, Congress has attempted to afford protection to both seamen and ship mortgage holders. Therefore, it is preferable to examine the judicial construction of wages within the context of the statute at issue in this case, section 953.

In *West Winds, Inc. v. M.V. Resolute,* 720 F.2d 1097 (9th Cir.1983), *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984), the Court held that in the absence of an actual loss of benefits, seamen could not assert a lien for wages under section 953 for an employer's failure to make contributions to a trust fund. In this case, there has been no actual loss of benefits because "the investments of the Money Purchase Benefit fund have produced a sufficient return to cover the unpaid contributions." Affidavit of Daniel Campbell ¶ 5.

The *West Winds* court recognized that contributions to trust funds frequently serve as a substitute for wage demands in collective bargaining negotiations. 720 F.2d at 1102. Despite the change in methods of compensating seamen, however, Congress has not amended section 953 to encompass contributions as wages. Congress has, though, amended other statutory schemes to include fringe benefits within the definition of wages. *See Morri-*

*son-Knudsen Construction Co. v. Director, Office of Workers' Compensation Programs,* 461 U.S. 624, 632–33 n. 8, 103 S.Ct. 2045, 2049–50 n. 8, 76 L.Ed.2d 194 (1983). In light of this legislative history, the *West Winds* court held that Congress did not intend employer contributions to constitute a preferred maritime lien under section 953. This Court adopts the reasoning of the Ninth Circuit in *West Winds* and holds that the claims for unpaid contributions to MEBA's Money Purchase Benefit plan are not wages under section 953. *See also Barnouw v. S.S. Ozark,* 304 F.2d 717, 719–20 (5th Cir.1962); *Brandon v. S.S. Denton,* 302 F.2d 404, 415–16 (5th Cir. 1962).

Therefore, it is

ORDERED AND ADJUDGED:

1. That PRMSA's motion for summary judgment against MEBA is hereby granted; and

2. That MEBA's cross motion for summary judgment is hereby denied.

3. That PRMSA shall submit to the Court a proposed final judgment after sixty days unless intervenors Ross and Sherwood have moved to reopen this action as to their claims.