915 F.2d 411
 1991 A.M.C. 471
 PRUDENTIAL INSURANCE, Plaintiff-Appellee,
v.
UNITED STATES LINES, INCORPORATED, General Electric Credit
Corp., Claimants-Appellees,
v.
SS SEA-LAND LEGION, Defendant,
v.
UNITED STATES of America, Plaintiff-Intervenor-Appellee,
M. Anapal, T. Lynch, N. Mooney, M. Raed, W. Pooler, M.
Walter, P. Marozas, P. Moon, J. Moustakas, P. Mullikin, B.
Swartz, E. Burke, H. Dickerman, W. Leclair, E. Mosse, M.
Poneros, MM & P Individual Retirement Account Plan,
Plaintiffs-Intervenors-Appellants.
 No. 89-15978.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted July 18, 1990.
Memorandum Disposition Aug. 31, 1990.
Opinion Oct. 5, 1990.
 
 William H. Carder, Leonard, Carder & Zuckerman, San Francisco, California, for plaintiffs-intervenors-appellants.
 Richard C. Giller, Sheldon A. Gebb, McCutcheon, Black, Verleger & Shea, Los Angeles, Cal., for plaintiff-appellee.
 R. Michael Underhill, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-intervenor-appellee.
 Appeal from the United States District Court for the Northern District of California.
 Before CHOY, WIGGINS and LEAVY, Circuit Judges.
 
 ORDER
 
 1
 The memorandum of the panel filed August 31, 1990, is redesignated as an opinion, authored by Circuit Judge Wiggins.
 
 
 2
 SO ORDERED.
 
 OPINION
 WIGGINS, Circuit Judge:
 
 3
 Masters, Mates & Pilots Individual Retirement Account Plan and various individual seamen appeal the district court's judgment dismissing their claim for a preferred maritime lien against defendant vessels based on certain unpaid contributions to the Plan. We have jurisdiction over this appeal pursuant to 28 U.S.C. Sec. 1291 (1988), and we affirm.
 
 
 4
 The question is whether the unpaid contributions to the plan are "wages of the crew." Appellants do not dispute that every published opinion addressing employer contributions to pension-type benefit plans similar to the one at issue here has concluded that such contributions are not "wages of the crew." See Citibank, N.A. v. Vessel American Maine, 865 F.2d 24, 28 (2nd Cir.1988); West Winds, Inc. v. M.V. Resolute, 720 F.2d 1097, 1100-01 (9th Cir.1983), cert. denied, 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); Barnouw v. S.S. Ozark, 304 F.2d 717, 719-20 (5th Cir.), cert. denied, 371 U.S. 923, 83 S.Ct. 291, 9 L.Ed.2d 231 (1962); Brandon v. S.S. Denton, 302 F.2d 404, 415-16 (5th Cir.1962); Puerto Rico Maritime Shipping Authority v. Point Vigilance Corp., 643 F.Supp. 661, 662 (M.D.Fla.1985); Cantieri Navali Riuniti v. M/V Skyptron, 621 F.Supp. 171, 188 (W.D.La.1985), aff'd in part and remanded in part, 802 F.2d 160 (5th Cir.1986); Long Island Tankers Corp. v. S.S. Kaimana, 265 F.Supp. 723, 726 (N.D.Cal.1967), aff'd, 401 F.2d 182 (9th Cir.1968), cert. denied, 393 U.S. 1095, 89 S.Ct. 879, 21 L.Ed.2d 785 (1969); Irving Trust Co. v. The Golden Sail, 197 F.Supp. 777, 778 (D.Or.1961).
 
 
 5
 Appellants contend, however, that their situation differs from the employer contributions involved in the cases above. Appellants point out that under the Plan's regulations, when an employer fails to make its required contribution on behalf of a particular employee, the Plan reduces that employee's base share of the fund by the amount due from the employer. Appellants argue that this reduction amounts to a direct loss of benefits to the seamen as a result of their employer's failure to contribute to the Plan. They then cite Long Island Tankers and West Winds for the proposition that if the seamen can show a loss of benefits to themselves from their employer's failure to make contributions, then the contributions are "wages of the crew." Appellants' argument presents a question of law which we review de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).
 
 
 6
 Appellants misread these cases. Long Island Tankers held that an employer's unpaid contributions to a pension benefit plan were not "wages of the crew" because the contributions were due the trust rather than the seamen; the seamen themselves had no entitlement to the employer's contributions. 265 F.Supp. at 726-27. The court left open the question whether seamen could assert a maritime lien against its employer's vessel "in the event of non-payment from the trust." Id. at 727 (emphasis added). This question, the court stated, stood on altogether different footing from the question which the court did address: whether seamen could assert a maritime lien against their employer's vessel for contributions not paid to the trust.
 
 
 7
 In West Winds, this court explained the distinction established in Long Island Tankers. Long Island Tankers decided that an employer's contributions due a union trust fund, to which the employees on whose behalf the contributions are made have no immediate entitlement, and which are used to finance the benefits which the employees may ultimately receive, are not "wages of the crew." West Winds, 720 F.2d at 1099. The other situation, not addressed in Long Island Tankers, was whether trust benefits--the accumulation of employer contributions and investment income--to which the seamen have currently become entitled but which the trust has refused to pay to the seamen as a result of their employer's failure to contribute its full share to the trust on the seamen's behalf, could be obtained by asserting a maritime lien against the vessel of the employer. Finding no allegation of the seamen's loss of trust benefits as a result of their employer's failure to contribute, West Winds held that the contributions fell within the Long Island Tankers rule and denied the maritime lien. West Winds, 720 F.2d at 1099.
 
 
 8
 A similar situation exists here. The seamen do not allege that because of their employer's failure to contribute, the Plan has refused to pay them benefits to which they are currently entitled. At this point, the seamen have not even attempted to obtain any benefits from the Plan. They allege only that under the Plan's regulations, at some future time they will become entitled to less benefits than if their employer had contributed. Such an allegation does not bring the seamen within the exception set out in Long Island Tankers.
 
 
 9
 Indeed, appellants' implicit concession that they do not know the amount of their alleged loss of benefits nor when that loss it will occur demonstrates exactly why the contributions at issue here cannot be considered "wages of the crew." Employer contributions to a pension benefit plan cannot be wages if the value of the benefit that the employees will ultimately receive is speculative because it is not capable of precise determination based on uncertain future events. See West Winds, 720 F.2d at 1100-01 (contributions are not "wages" because the value which they may ultimately confer upon a seaman will vary according to the accumulation of trust funds, the amount of investment gains or losses, and employees' needs); Citibank, 865 F.2d at 28 (contributions are not "wages" because the individual seaman's realization of the value of the contributions depends upon the extent of the plan's administrative costs, the gains or losses from the plan's investments, employee forfeitures, and the extent of employer deficiencies).
 
 
 10
 It is clear that under the Plan's regulations, the employee whose employer contributes to the Plan starts with a greater base share than the employee whose employer fails to contribute. However, neither employee is entitled to receive that base share at the time it becomes due to the Plan from the employer. Both employees have to wait until their entitlement vests and they request payment of their benefits from the Plan. Even after that time, the extent of the benefits either employee ultimately receives will be essentially dependent upon the administrative costs of the Plan, the investment gains or losses, employer deficiencies, and employee forfeitures. These uncertain factors render the value of the employer's contributions speculative. Indeed, the Plan's administrator, Mr. Sokolowski, admitted that it would be fruitless "even to speculate" about the value of the benefits an employee might ultimately receive.[1] Thus, the district court correctly concluded that the unpaid employer contributions are not "wages of the crew" entitled to a preferred maritime lien.
 
 
 11
 The district court's judgment is AFFIRMED.
 
 
 
 [1]
 Appellants counter that because some of the individual seamen here have vested entitlement to their benefits, the value of the benefits is not speculative. Yet, none of the seamen has attempted to convert his entitlement to a cash equivalent. Appellants' precise argument was flatly rejected in Citibank, 865 F.2d at 28 ("[e]ven for vested seamen, realization of a particular sum of money can only be a matter of speculation")