**Curtis NEHRING, et al., Plaintiffs,**

**John T. Adams, et al., Intervenors–Plaintiffs,**

**Seafarers Trust Funds, Seafarers Welfare Plan, Seafarers Vacation Plan, Harry Lundberg School of Seamanship, Seafarers Hiring Hall Trust Fund, Transportation Institute, Intervenors–Plaintiffs, Appellees,**

**v.**

**STEAMSHIP M/V POINT VAIL, Defendant,**

**Point Vail Company, Defendant–Claimant, Appellant.**

**No. 89–3108.**

United States Court of Appeals, Eleventh Circuit.

May 22, 1990.

Jack C. Rinard, MacFarlane, Ferguson, Allison & Kelly and David F. Pope, Tampa, Fla., for defendant-claimant, appellant.

Frank E. Hamilton, III, Frank Hamilton & Associates, P.A., Tampa, Fla., for intervenors-plaintiffs, appellees.

Before HATCHETT and COX, Circuit Judges, and HENDERSON, Senior Circuit Judge.

COX, Circuit Judge:

Point Vail Company, defendant below, appeals from a judgment rendered against it in favor of the intervening plaintiffs Seafarers Trust Funds. Point Vail does not contest liability; rather, it contends that the district court erred in holding that the Funds could satisfy their judgment from a bond posted for release of the *M/V Point Vail.* Point Vail also appeals the denial of a post-trial motion in which it sought to have the judgment overturned and the case dismissed for lack of subject matter jurisdiction. We affirm in part and reverse in part.

## I. BACKGROUND

In January 1984, the cargo vessel *M/V Point Vail,* owned by the defendant Point Vail Company, arrived in port at Tampa, Florida, at the conclusion of a scheduled one month voyage to American coastal ports. The crew was discharged and informed by the ship's master that there was no money to pay their wages. Shortly thereafter, the licensed crewmembers instituted an action *in rem* against the vessel, praying that she be arrested, condemned and sold to satisfy their claims for wages. The ship was arrested and placed in the custody of the United States Marshal. Subsequently, several parties intervened in the proceeding, including intervening plaintiffs Seafarers Trust Funds.[1]

The intervening Seafarers Trust Funds were established pursuant to collective bargaining agreements between the Seafarers International Union of North America, Atlantic Gulf Lakes and Inland Waters District, AFL–CIO (together referred to as the Seafarers International Union), and various shipping companies or associations representing shipping companies. Each of the five intervening trust funds is intended to provide a specific benefit for the unlicensed seamen who are represented by the Seafarers International Union. For example, the Seafarers Vacation Plan, funded by the Seafarers Vacation Fund, provides for the payment of Vacation Benefits as described in that plan. *See* Plaintiff's Exhibit No. 1. The Seafarers Hiring Hall Trust Fund pays for the operation, maintenance, expansion and replacement of union hiring halls and employment centers for the benefit of union seamen. *See* Plaintiff's Exhibit No. 4. The defendant Point Vail Company employed seamen represented by the Seafarers International Union and is a party either directly or indirectly to the agreements.

The nature of the contributions which Point Vail agreed to make is illustrated in the "Memorandum of Understanding and Agreement," which is Plaintiff's Exhibit No. 9. Although the specific amounts due to certain of the trust funds were modified by later agreements, that document reveals that Point Vail Company agreed to make contributions to the five funds at a fixed

1. The "Seafarers Trust Funds" is the collective reference to the intervening plaintiffs involved in this appeal; they are THE SEAFARERS WELFARE PLAN, THE SEAFARERS HARRY LUND-BERG SCHOOL OF SEAMANSHIP, THE SEAFARERS VACATION PLAN, THE TRANSPORTATION INSTITUTE, and THE SEAFARERS HIRING HALL TRUST FUND.

rate, calculated on a per man, per day worked basis and included provisions for penalties and interest. Deposition testimony admitted at trial disclosed that at the time the *M/V Point Vail* concluded its voyage in Tampa in January, 1984, the total contributions due to all plans on the per man, per day worked basis had increased to $52.69. Record on Appeal, vol. 9, p. 48.

The Seafarers Trust Funds presented an intervening complaint. At the time the Funds intervened in this action, the pertinent section of Local Rule 7.09, which applies to Admiralty and Maritime claims in the Middle District of Florida, read as follows:

(a) Whenever a vessel or other property is seized, attached or arrested in a proceeding and said property is in the hands of the Marshal, anyone having a claim against the vessel or property is required to present the same by intervening complaint filed in the case and not by way of original complaint, unless otherwise ordered by the Court. Upon the filing of each such intervening complaint the Clerk shall forthwith deliver a conformed copy thereof to the Marshal who shall thereupon post such copy on the vessel or property, but the Marshal need not re-arrest or re-attach the vessel or property....

The Seafarers Trust Funds contended that their claims, for contributions owed by Point Vail Company on behalf of seamen represented by the Seafarers International Union and employed aboard the *M/V Point Vail*, presented maritime claims within the court's admiralty and maritime jurisdiction. Neither in their original intervening complaint[2] nor in their later intervening complaint[3] did the Seafarers Trust Funds allege that the defendant could not be found within the district, as required by Rule B(1)

of the Supplemental Rules For Certain Admiralty and Maritime Claims. Rather, the Seafarers Trust Funds alleged that the defendant had no assets with which to respond to their claims within the judicial district. In both complaints, the Seafarers Trust Funds alleged that these claims were being brought *in personam* against the defendant Point Vail Company and *in rem* against the vessel. The complaints prayed that the arrest of the vessel *M/V Point Vail*, instituted at the behest of the licensed crewmembers who began the action, be maintained and that the vessel be condemned and sold to satisfy their claims for trust fund contributions.

Point Vail Company answered the initial intervening complaint on May 21, 1984, "as claimant of and on behalf of" the defendant-vessel. Point Vail Company asserted as one of several affirmative defenses in that pleading that "[t]he Court lacks *in personam* jurisdiction over POINT VAIL COMPANY," with no further explanation provided. In June, Point Vail Company answered the initial intervening complaint in its own behalf, entering a general appearance and not contesting the court's *in personam* jurisdiction over it. Similarly, on June 26, 1984, defendant Point Vail Company made a general appearance and answered the later intervening complaint of the Seafarers International Union and the Seafarers Trust Funds, again not contesting *in personam* jurisdiction. In its answer to the amended complaint of the Seafarers International Union and the Seafarers Trust Funds, filed on June 24, 1985, Point Vail Company specifically admitted that the court had *in personam* jurisdiction over it.

The defendant vessel *M/V Point Vail* was released after a bond, in the form ordered by the court, was posted by Point Vail Company to secure payment of certain

---

**2.** The original complaint seeks contributions due the Seafarers Trust Funds up to and including January 18, 1984.

**3.** The later complaint, filed jointly by the Seafarers International Union and Seafarers Trust Funds on June 8, 1984, alleges that the defendants wrongfully employed non-Seafarers International Union personnel to perform work

aboard the vessel while it was under arrest and under the custody of the United States Marshal. The Seafarers Trust Funds asserted therein a similar claim for unpaid contributions to the various plans under the collective bargaining agreements. This later complaint was then amended on June 12, 1985.

claims. In its order providing for the release of the vessel under bond, the district court stated:

> 2. That the form for bond will be conditioned upon payment of any judgment entered against M/V POINT VAIL in rem and/or Point Vail Company, in personam, on a claim or claims of maritime attachment and garnishment and upon condition that this Order be incorporated in and attached to said Bond.

Record on Appeal, vol. 2, tab 78. This order did not bind Point Vail Company to pay any and every *in personam* judgment rendered against it, but only meritorious *in personam* maritime claims brought upon properly invoked attachment and garnishment proceedings. In their stipulation and joint motion seeking release of the vessel, the parties agreed:

> 5. That there is a dispute between the parties as to whether the complaint and intervening complaints, or any of them, constitute maritime attachment and garnishment actions against Point Vail Company, in personam, for which Point Vail Company should be required to post security.

Record on Appeal, vol. 2, tab 77. In light of the parties' stipulation, the court's order providing security as a substitute for the vessel contemplated a properly initiated claim against the vessel in the first instance.[4]

Following a non-jury trial, the district court entered a judgment in favor of the Seafarers Trust Funds for unpaid employer contributions and ordered that the trust funds could satisfy their judgment out of the Vessel Release Bond which was posted by Point Vail Company to secure release of the vessel. Point Vail Company has appealed this judgment. First, Point Vail argues that the claims presented by the Seafarers Trust Funds were not within the district court's admiralty and maritime jurisdiction and therefore that the district court lacked subject matter jurisdiction over them. Under this theory, the judgment rendered against Point Vail is a nullity. Alternatively, Point Vail asserts that the Seafarers Trust Funds have only *in personam* claims against the company and not *in rem* claims against the vessel. Because the Seafarers Trust Funds did not perfect maritime attachment under the requirements of Supplemental Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, Point Vail argues, the district court erred when it ordered that the Seafarers Trust Funds could satisfy their judgment from the security posted to release the vessel.

## II. DISCUSSION

### A. *Jurisdiction to Hear the Intervening Claims*

Point Vail Company asserted in the court below and argues on appeal that the district court lacked subject matter jurisdiction to adjudicate the intervening claims presented by the Seafarers Trust Funds. Point Vail contends that its agreements to make contributions to the various trust funds are not maritime contracts because the obligations "do[ ] not remotely affect the operation, navigation or management of a vessel." Brief of Appellant at 14. Therefore, reasons Point Vail, no basis exists to support the court's admiralty jurisdiction, since these contract obligations provided the only jurisdictional basis alleged by the Seafarers Trust Funds. The Seafarers Trust Funds respond that the agreements which created the trusts, and Point Vail's obligation to make contributions, are founded upon and incorporated in the master collective bargaining agreement. This agreement, known as the Standard Tanker Agreement, provides for and governs employment of union seamen. The Funds then argue that since the services of these unlicensed crewmembers are an aid to mar-

---

**4.** Fundamentally, a valid *in rem* maritime claim carries the right to satisfaction from the vessel, since the claim constitutes a lien. By contrast, an *in personam* maritime claim carries no such right unless Supplemental Rule B process or other attachment or garnishment procedures have been properly invoked. Therefore, the district court's requirement that the bond stand for *in personam* claims of maritime attachment and garnishment as well as for *in rem* maritime claims, implicitly depended on whether such a meritorious claim existed.

itime commerce and navigation, "[t]he contract setting forth the obligation to pay fringe benefit contributions, plainly falls within the maritime jurisdiction." Brief of Appellee at 18. We are presented with the issue of whether this claim properly concerns matters within the district court's admiralty jurisdiction. We conclude that the district court's exercise of jurisdiction was proper.

Article III, Section 2 of the Constitution states that the judicial power of the United States shall extend "to all cases of admiralty and maritime jurisdiction." With regard to contracts, determining whether a particular agreement falls within this jurisdictional grant focuses on " 'the nature of the contract, as to whether it has reference to maritime service or maritime transactions.' " *E.S. Binnings, Inc. v. M/V Sandi Riyadh*, 815 F.2d 660, 662 (11th Cir.) *reh'g en banc denied* 820 F.2d 1231 (1987), quoting *North Pacific S.S. Co. v. Hall Bros. Marine R. & Shipbuilding Co.*, 249 U.S. 119, 125, 39 S.Ct. 221, 223, 63 L.Ed. 510 (1918). Not every contract that somehow relates to a ship or its business is considered maritime. To come within the federal court's admiralty and maritime jurisdiction, "such contracts must pertain directly to and be necessary for commerce or navigation upon navigable waters." 7A *Moore's Federal Practice* ¶ .230[2], at 2761 (1988). *See also E.S. Binnings, Inc.*, 815 F.2d at 663; 1 *Benedict on Admiralty* § 182, at 12–5, 6 (1989) ("In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry."). Deciding whether contracts come within federal maritime jurisdiction, however, is not subject to exactitude. Precedent and usage are helpful with regard to more common types of contracts, *id.* at 12–3, while less common situations must be considered on a case-by-case basis. *Ford Motor Co. v. Wallenius Lines, Inc.*, 476 F.Supp. 1362, 1366 (E.D.Va.1979); *Cf. Crotwell v. Hockman–Lewis, Ltd.*, 734 F.2d 767 (11th Cir.1984) (noting that determination of whether particular personal injury claims are sufficiently proximate to traditional maritime activity to satisfy admiralty jurisdiction will develop on case-by-case basis).

The test we apply in deciding whether the subject matter of a contract is necessary to the operation, navigation, or management of a ship afloat is a test of reasonableness, not of absolute necessity. 7A *Moore's Federal Practice* ¶ .230[2], at 2762. See generally, *id.* ¶ [4], at 2781 to 2872, and 1 *Benedict on Admiralty* § 184, at 12–11 to –22 for specific examples of contracts deemed to be within the admiralty and maritime jurisdiction.

We have found no cases directly on point holding that agreements such as those upon which the Seafarers Trust Funds rely in bringing their claims for contribution relate to the operation, navigation or management of a ship and therefore are within the court's admiralty jurisdiction. Point Vail asserts, without citation of authority, that "an obligation to make contributions to union plans does not give rise to any *in personam* right that is recognizable in a court of admiralty." Appellant's Brief at 13. We disagree. One author has noted that when courts have extended admiralty jurisdiction beyond its traditional parameters, they have done so in two basic ways, of which the first applies here. "[W]here a party has contractually undertaken some activity which, standing alone, would not be an admiralty matter, but has undertaken that activity in conjunction with an indisputable maritime contract, the Courts have included the ordinarily non-maritime activity in admiralty jurisdiction." Bridwell, *Admiralty Contract Jurisdiction and Contract Liens under American Law* 6, *reprinted in* 1988 Southeastern Admiralty Law Institute Program Materials. This statement accurately describes our determination that admiralty jurisdiction exists in this case. Standing alone, Point Vail Company's obligation to make trust fund contributions is not an admiralty matter. Taken in conjunction with the employment of the represented crewmembers, however, the obligation becomes subject to admiralty jurisdiction.

Several courts have held that claims by maritime union trust funds, such as the Seafarers Trust Funds, for failure to make contributions due based upon work performed by union-represented seamen do not constitute "wages of the crew" for purposes of determining preferred maritime liens. *See, e.g., Citibank, N.A. v. Vessel American Maine,* 865 F.2d 24 (2d Cir.1988); *West Winds, Inc. v. M.V. Resolute,* 720 F.2d 1097 (9th Cir.1983) *cert. denied,* 467 U.S. 1242, 104 S.Ct. 3513, 82 L.Ed.2d 822 (1984); *Puerto Rico Maritime Shipping v. Point Vigilance,* 643 F.Supp. 661 (M.D.Fla.1985) *aff'd,* 803 F.2d 1183 (11th Cir.1986). The trust funds in the three cases mentioned argued that the unpaid contributions based on employment of the union seamen should constitute "wages of the crew," thus entitled to a higher status than the ships' preferred mortgage liens. If these claims had represented direct wage claims arising from the crew-members' contracts of employment, then clearly they would have been entitled to preferred status. The courts held that the plaintiffs had failed to prove actual economic loss sustained by each seaman's trust account, and for that reason, the unpaid contributions would not support liens for unpaid wages.[5] Conceivably, the *Citibank, West Winds,* and *Puerto Rico Maritime Shipping* courts might have decided that although the plaintiffs' claims would not support a maritime lien, they nonetheless would support an *in personam* judgment. That issue, however, was not placed before those courts. To our knowledge, then, the precise issue now before us has not been considered in a reported opinion. Other authority leads us to conclude that admiralty jurisdiction is appropriate in this case.

In *Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293 (2d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988), a shipper sued a carrier, a freight forwarder, and its own insurer for damages suffered to its goods which had been stored on deck as opposed to under deck. The portion of the opinion dealing with the liability of the freight forwarder is relevant here. As a general rule, general agency contracts ("husbandry contracts"), whereby one provides certain landside marine support services such as cargo solicitation, procurement of supplies, crews, stevedores or tugs, are not cognizable in admiralty since these services are considered to be of a nature preliminary to the voyage. In *Ingersoll,* the freight forwarder challenged the district court's assertion of admiralty jurisdiction on this ground, arguing that its freight forwarding services, which included "[t]he preparation and processing of export declarations, delivery orders, dock receipts, bills of lading, and advance notification of shipping," *id.* at 302, partook of the preliminary nature of a general agency contract and therefore the contract was excluded from the court's admiralty jurisdiction. In analyzing the issue, the Second Circuit pointed out the Supreme Court's admonition in *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961), in which the Court stated that " '[t]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw.' " 829 F.2d at 301. The *Ingersoll* court then looked to the nature of the services performed by the freight forwarder and concluded that without them, "there can be no voyage" and that provi-

---

**5.** The facts in these cited cases established that the unpaid trust fund contributions had been made up through accruals of interest on the funds and by advancements from the funds' trustees to cover the unpaid contributions. Although these factors were important to the three courts cited in the text of this opinion (where the claims were brought as *in rem* wage claims), we hold that whether or not the unpaid contributions of Point Vail Company were somehow "covered" by the trustees, such that no seaman's individual account suffered adversely, is irrele-

vant to a determination of jurisdiction over these *in personam* claims.

The *Citibank* court noted as well that "the hallmark of a wage lien is that the wage owed to a seaman has accrued by virtue of his service to a particular ship." 865 F.2d at 27. Because the Seafarers Trust Funds seek *in personam* judgments and not liens, that requirement is inapplicable here, although we note that all of Point Vail Company's liability for contributions derives from operation of the *M/V Point Vail.*

sion of such services constituted "an essential and integral part of the shipping process." *Id.* at 302. The court then found that invocation of admiralty jurisdiction against the freight forwarder was proper.

Likewise, in *Bergen Shipping Co. Ltd. v. Japan Marine Services, Ltd.*, 386 F.Supp. 430 (S.D.N.Y.1974), the court held that admiralty jurisdiction existed in another atypical circumstance. In *Bergen Shipping*, Japan Marine Services (JMS) was sued for breach of its contract to provide a crew to man a vessel owned by the plaintiff. Generally, a contract to provide a crew is considered to be without the admiralty and maritime jurisdiction of the federal courts, since it again is preliminary to the voyage. The court, however, noting that "every case turns on its individual facts," *id.* at 434, held that because JMS was contractually bound to "effect a compromise with the crew (through the Union) in the event of any grievance or demand as to 'daily life on board' the ship," the contract was for more than simply furnishing a crew. After providing a crew, JMS later refused or was unable to effect a compromise over the crew's objections to a labor agreement. The court held that admiralty jurisdiction existed on the facts before it, noting that "the issues in contention are clearly 'an integral part of ... maritime commerce and, consequently, should be cognizable within the admiralty jurisdiction of the district court.'" *Id.* at 435 (quoting 7A Moore, Federal Practice ¶ .250 at 3006 (2d ed. 1972)).

These cases demonstrate the necessity of a case-by-case approach to the introduction of admiralty jurisdiction to novel or unusual situations. In the case before us, it is not the actual contract to make contributions to the Seafarers Trust Funds that is an "integral" part of the maritime commerce in this case, but rather, the employment of the seamen without whom the voyage would be impossible. Through collective bargaining, union representatives of these seamen have traded higher wages for the right to receive trust fund benefits that are funded by employer contributions. The obligation to make contributions is breached, if at all, only after the crewmembers have provided essential maritime services

to their vessel, since contributions are paid after the fact, on a man-days worked basis. The failure to compensate seamen in the manner here at issue will, in our view, support an *in personam* claim in admiralty.

In *West Winds, Inc. v. M.V. Resolute*, 720 F.2d 1097 (9th Cir.1983), the Ninth Circuit Court of Appeals stated that "[d]emands for contributions to trust funds providing benefits to employees increasingly serve as a substitute for wage demands in collective bargaining negotiations." *Id.* at 1102. In support of its conclusion, the *West Winds* court noted that the Supreme Court in *Morrison–Knudsen Constr. Co. v. Director, Office of Worker's Compensation Programs*, 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983) recognized the changes that have occurred in methods of paying compensation. Although both the Ninth Circuit in *West Winds* and the Supreme Court in *Morrison–Knudsen* were constrained legislatively from holding, respectively, that trust fund contributions constituted wages (for purposes of determining preferred maritime liens) or that contributions to union trust funds were includable in calculating a federal worker's compensation award, the recognition that such contributions are a form of compensation is sound. Indeed, common sense leads to the conclusion that payments to trust funds such as the Seafarers Trust Funds constitute compensation. Payments to these trust funds are a portion of the total collective bargaining package which facilitates employment of these unlicensed seamen. Employment of these seamen, in turn, is not only necessary, but indispensable to the operation, navigation, or management of the ship. If we, like the court in *West Winds*, were presented the question of whether a claim for contributions would support a preferential *in rem* claim for wages, we too would be compelled to find in the negative. We are presented an *in personam* claim, however, and find no bar to jurisdiction.

B. *Satisfaction of Judgment From Vessel Release Bond*

Point Vail Company contends that the Seafarer Trust Funds failed to properly

invoke Supplemental Rule B attachment, because they failed to state under oath that Point Vail Company could not be found within the district and because they failed to obtain and serve a writ of attachment on the vessel.[6] The intervening plaintiffs Seafarers Trust Funds assert in each complaint that their claims are brought pursuant to Local Admiralty Rule 7.09. This rule, captioned "INTERVENTION," states in subsection (a) that anyone having an *in rem* claim against a vessel or property must present that claim by way of intervening complaint, and that the United States Marshal need not re-arrest or re-attach a vessel or property already so arrested or attached. Subsection (b) of this rule states simply that any party is permitted to intervene, without leave of court, in any admiralty proceeding in which the Marshal has arrested or attached a vessel or property. It may well be that Local Rule 7.09 means that when a vessel is already in the custody of the Marshal, an intervening party need not obtain a writ of attachment. Because, however, this local rule does not displace the requirement contained in Supplemental Rule B that plaintiffs seeking the benefits of attachment (which include security for their claims) must state under oath that the defendant "shall not be found within the district," we need not and do not decide whether the local rule is inconsistent with Supplemental Rule B.

■ The pleadings and various documents filed throughout this action by the Seafarers Trust Funds illustrate that its intent in bringing the action *in personam* against Point Vail Company and *in rem* against the *M/V Point Vail* was to obtain security for their claims. For example, in paragraph 9 of the original intervening complaint, the Seafarers Trust Funds allege that

> [s]ince the Defendant POINT VAIL COMPANY is the owner and operator of the vessel POINT VAIL, and upon information and belief has no substantial assets within this judicial district within which to respond to the claims of the Trust Funds, Intervenor SEAFARERS TRUST FUNDS bring this action *in personam* against Defendant POINT VAIL COMPANY, and *in rem* against the vessel, and pray that the vessel be attached as surety for payment of the claims against the Defendant POINT VAIL COMPANY.

Nowhere in any of the pertinent pleadings and memoranda do the Seafarers Trust Funds allege that Point Vail Company could not be found within the district. The attempt to use Supplemental Rule B attachment to gain security for an *in personam* claim independent of its use to compel the appearance of the defendant is contrary to the primary purpose of the rule.

"[T]here are two reasons for the procedure authorized in Supplemental Rule B: to assure a respondent's appearance, and to assure satisfaction in case the suit is successful." *Polar Shipping Ltd. v. Oriental Shipping Corp.*, 680 F.2d 627, 637 (9th Cir.1982) (quoting *Swift & Co. Packers v. Compania Columbiana del Caribe*, 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950)); *see also Chilean Line Inc. v. United States*, 344 F.2d 757, 759–60 (2d Cir. 1965); *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 581–82 (2d Cir.1963); *Integrated Container Serv., Inc. v. Starlines Container Shipping, Ltd.*, 476 F.Supp. 119, 122 (S.D.N.Y.1979); 7A *Moore's Federal Practice* ¶ B.06 at B–256 (1988). Supplemental Rule B, however, cannot be used purely for the purpose of obtaining security: "The two purposes may not be separated, however, for security cannot be obtained except as an adjunct to obtaining jurisdiction." *Seawind Compania*, 320 F.2d at 582; *quoted in Chilean Line Inc.*, 344 F.2d at 760. In none of the cases cited to the court or located through our independent research did a party suc-

---

**6.** Whether a defendant can be "found within the district" involves a two-pronged analysis developed by courts construing former Admiralty Rule 2, which was the rule that Supplemental Rule B replaced. The inquiry asks: "'first, whether [the respondent] can be found within the district in terms of jurisdiction, and second, if so, whether it can be found for service of process.'" *Seawind Compania, S.A. v. Crescent Line, Inc.*, 320 F.2d 580, 582 (2d Cir.1963) (citation omitted).

cessfully utilize Supplemental Rule B attachment to acquire security when neither a verified complaint nor an affidavit stated that the defendant was not present in the district to answer an *in personam* claim. Two cases present close situations, but each is distinguishable. In *Cordoba Shipping Co., Ltd. v. Maro Shipping Ltd.*, 494 F.Supp. 183 (D.Conn.1980), the plaintiff filed an admiralty action and sought attachment under Supplemental Rule B, accompanied by the required affidavits. The defendants filed a motion to dissolve the attachment, arguing that they were subject to the court's jurisdiction and that attachment had been sought solely to secure the *in personam* claims. The court denied the motion, holding that the defendants' jurisdictional presence did not defeat attachment, because the plaintiff additionally had sought attachment under Rule 64 of the Federal Rules of Civil Procedure, which allows use of state prejudgment attachment procedures to secure a claim. Attachment there continued, as "[t]he plaintiff ... in its complaint expressly sought 'maritime attachment pursuant to Supplemental Rule B' *plus* the 'remedies of attachment or garnishment provided'" by state law. *Id.* at 186 (emphasis in original).

In *Staronset Shipping Ltd. v. North Star Navigation Inc.*, 659 F.Supp. 189 (S.D.N.Y.1987), the district court held that Supplemental Rule B was not violated when the plaintiff-shipowner seeking attachment openly admitted that its primary purpose was to obtain security against the defendant-charterer in order to satisfy claims for stevedoring services pending against the owner in another judicial district, but incurred by the charterer. The distinction between that case and the one before us lies in the fact that the literal requirements of the rule were complied with, and specifically, that the shipowner properly pled that the defendant could not be found within the district. We also note that other parties which intervened in the action involving the *M/V Point Vail* made the necessary allegations in their complaints to invoke attachment, and thereby gain security, whereas the Seafarers Trust Funds simply did not.

As noted earlier, the Seafarers Trust Funds never alleged in the verified complaints nor in any affidavit that the defendant Point Vail Company could not be found in the district. The claims they present do not constitute maritime liens against the vessel, and the Seafarers Trust Funds have conceded as much. The averments contained in their pleadings that the defendant has no assets within the district—or no substantial assets—do not satisfy the requirement set forth in Supplemental Rule B that attachment will issue only when it is sworn to that "the defendant cannot be found within the district," and they are not the substantial equivalent of that requirement. Fairly stated, the Seafarers Trust Funds sought to use maritime attachment to secure an *in personam* claim, but failed to insert the key that unlocks that door. After Point Vail Company entered a general appearance, maritime attachment—which exists primarily to secure such appearance—could no longer properly issue, "and the suit [should have proceeded] as any other maritime claim in personam." 7A *Moore's Federal Practice* ¶ B.08 at B–351.

The Seafarers Trust Funds contend that because of Local Rule 7.09, attachment would not issue once the vessel had been arrested and was in the custody of the Marshal. By its terms, that rule applies to *in rem* claims; it makes no mention of *in personam* claims such as those of the Seafarers Trust Funds. Even if applicable to the claims in question, however, Local Rule 7.09 cannot override the requirements of Supplemental Rule B, and we specifically hold that the Seafarers Trust Funds failed to comply with those requirements by failing to state under oath that the defendant Point Vail Company could not be found within the district. Because of this failure, the benefit of obtaining security for the claims as an adjunct to obtaining personal jurisdiction over the defendant was lost once Point Vail Company submitted to the court's jurisdiction.

## III. CONCLUSION

The order of the district court denying Point Vail's motion to have the judgment

overturned and the intervening complaints of the Seafarers Trust Funds dismissed for lack of subject matter jurisdiction is AFFIRMED. That portion of the order entitled "Judgment in a Civil Case" entered October 31, 1988, which allows the Seafarers Trust Funds to satisfy their judgment from the vessel release bond posted to release the *M/V Point Vail* from *in rem* claims, is REVERSED.